**People of the State of Illinois, Plaintiff-Appellee, v. Herbert Mallory, Defendant-Appellant.**

**Gen. No. 66–110.**

Third District.

November 25, 1968.

Julian Cannell, of Peoria, for appellant.

Robert E. Manning, Jr., State's Attorney, of Peoria, and Jay Janssen, Assistant State's Attorney, for appellee.

SCHEINEMAN, J.

The defendant was convicted by a jury of the murder of Neoma Mallory, his ex-wife. On this appeal it is contended that the evidence fails to prove any criminal intent, the defendant claiming it was an accident.

A man named Kille who sometimes roomed in the house of Mrs. Mallory, had come in about 4:30 p. m. and obtained her permission to lie down in the back bedroom, where he went to sleep. Mrs. Mallory then went and met her former husband. They stopped at a couple of taverns, did some other errands, and arrived back at the house about 7:30 p. m. Kille was awakened by the defendant's

voice. Defendant had come in to the bedroom and stood five or six feet from the doorway. He said to Kille, "Jack, you had better leave because I don't want you to see what might happen."

The defendant's version of what happened was that he saw Kille on the bed. He called to his wife that "Jack's out here." He asserts that he had gotten a butcher knife to cut something for a sandwich. He asked Mrs. Mallory to come and see something. Then he says:

"Well, I stumbled and as I was going into the hallway to where she was and she must have been coming in there, because we met right between the hall and the bedroom, right in the little doorway there . . . I don't know exactly what happened—then I fell against her and she didn't say anything and the next thing I realized that the knife was plunged in her body." He also stated he had stumbled—tripped over a rug—caught his foot—she was right in the doorway when the knife went into her.

Kille testified that when he wakened hearing defendant tell him to leave, the defendant was standing at the foot of the bed with a knife in his hand. Mrs. Mallory came in and was five or six feet from the defendant, and made some remarks which he did not recall, then he saw defendant put the knife into her. They weren't far enough apart that he had to take any steps. He went toward her with the knife in his right hand, it was an underhand—not an overhand thrust.

Kille also said he did not see the defendant stumble and that he never did fall. When the witness was asked whether defendant deliberately thrust the knife into her body, the witness replied he could not be the judge of that.

The last sentence presents the gist of the defense argument. It is asserted that the State failed to prove any criminal intent. Citations are: People v. Ahrling, 279 Ill 70, 116 NE 764, and People v. McPheron, 354 Ill 381, 188 NE 470. We do not consider these cases suf-

ficiently similar to the case before us to constitute any guide. This witness told what he heard and saw. He merely declined to state any opinion of what was in the defendant's mind.

As to Kille's statement that he did not see defendant stumble, the defense counsel argued somewhat with the witness that he was not positive defendant did not stumble, all he could say was that he did not *see* him stumble. Kille explained he did not focus his attention on the man's feet.

Cases cited are People v. Holtz, 294 Ill 143, 128 NE 341, and People v. Wilson, 400 Ill 461, 81 NE2d 211. The rules of law quoted from those cases are limited to situations where the evidence is strictly circumstantial. They are not applicable to the testimony of an eyewitness.

There was some testimony that the bedroom was carpeted with wall-to-wall type. This and the description of the stabbing by the eyewitness supplies evidence that the stabbing was not an accident caused by a tripping and falling.

The coroner's physician testified as to his findings upon examination of the deceased, that the knife thrust had penetrated through the stomach, through the pancreas, severed the portal vein, and severed or penetrated the renal artery and vein.

The extent of the injuries indicated there was considerable force used and make the story of a loss of balance, or tripping, seem very unlikely. The jury was justified in believing the eyewitness who was obviously confining his testimony to what he had heard and seen, and still remained vivid in his memory.

We believe the jury's verdict is entitled to respect and that it is supported by the evidence. The judgment is affirmed.

Affirmed.

STOUDER and ALLOY, JJ., concur.